[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14250

_____

N.L.R.B. Case 12-CA-25299

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2011
JOHN LEY
CLERK

TCB SYSTEMS, INC.,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent.

_____

No. 10-14744

_____

N.L.R.B. Case 12-CA-25299

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

TCB SYSTEMS, INC.,

Respondent.

_____

Petitions for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board

_____

(December 16, 2011)

Before EDMONDSON and MARTIN, Circuit Judges, and FULLER,[*] District Judge.

PER CURIAM:

Petitioner TCB Systems, Inc. ("TCB") appeals the decision and order of the National Labor Relations Board finding that the company committed three violations of Section 8(a) of the National Labor Relations Act ("the Act") by: refusing to recognize and bargain with the incumbent union; threatening not to hire individuals based on their union involvement; and refusing to hire three individuals because of their protected union activities.[1] After thorough

_____

[*] Honorable Mark E. Fuller, United States District Judge for the Middle District of Alabama, sitting by designation.

[1] Section 8(a) of the NLRA provides: "It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
. . . .
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .;
. . . .
"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." 29 U.S.C. § 158(a).

consideration of the oral and written submissions of both parties, we affirm the Board's decision and grant the Board's petition for enforcement of its order.

## I.

Under the Act, the Board's fact findings are conclusive so long as they are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); see NLRB v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998).[2] To be considered "substantial," the evidence need only "be such that it would be *possible* for a reviewing court to reach the same conclusions that the administrative fact-finder did." Schering-Plough Corp. v. FTC, 402 F.3d 1056, 1063 (11th Cir. 2005) (emphasis added). This standard of review does not change when the Board reaches a different conclusion from the ALJ below. See NLRB v.

---

Section 7 of the Act provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157.

[2] For the most part, this "substantial evidence" standard applies to the three issues before us here. See Fall River Dyeing & Finishing Corp., v. NLRB, 482 U.S. 27, 42–43, 107 S. Ct. 2225, 2235–36 (1987) (applying the substantial evidence standard to a successorship determination); NLRB v. Gimrock Const., Inc., 247 F.3d 1307, 1310–11 (11th Cir. 2001) applying the standard to the Board's drawing of "overarching inferences" in interpreting testimony, id. at 1310); McClain, 138 F.3d at 1421 (applying the standard to determination of an employer's hiring motive). And where it does not, the standard is more deferential still. See NLRB v. Foodway of El Paso, 496 F.2d 117, 119 (5th Cir. 1974) (applying the "arbitrary and capricious" standard to the bargaining unit determination in the successorship context); Int'l Bhd. of Boilermakers, et al. v. NLRB, 127 F.3d 1300, 1306 (11th Cir. 1997) (deferring to the Board's credibility determination "unless [it is] inherently unreasonable or self-contradictory").

Gimrock Const., Inc., 247 F.3d 1307, 1311 (11th Cir. 2001).[3]  Thus, we may not

"displace the Board's choice between two fairly conflicting views, even though

[we may] justifiably have made a different choice had the matter been before [us]

de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456,

465 (1951); see NLRB v. U.S. Postal Serv., 526 F.3d 729, 732 (11th Cir. 2008)

(affirming the Board's determination where it "has made a plausible inference

from the record" (quotation marks omitted)).

## II.

TCB first argues that the Board erred in finding that TCB failed to

recognize and bargain with the Union, in violation of Sections 8(a)(5) and (1) of

the Act.  See 29 U.S.C. § 158(a)(5).  TCB admits its refusal to bargain with the

Union, but disputes the Board's determinations that it was a "successor" to

UNICCO and that the Union remained representative of the Nova employees for

purposes of collective bargaining.  The Board unanimously affirmed the ALJ, and

adopted his findings and conclusions, on this question.  Thus, we look to the

ALJ's findings.

---

[3] Nevertheless, because the court reviews the record "as a whole," the ALJ's findings do become "one factor to be considered in determining whether [the substantial evidence] standard has been satisfied."  Parker v. Bowen, 788 F.2d 1512, 1517 (11th Cir. 1986).

4

The ALJ listed the stipulations on which he relied to find TCB a successor.[4] He also observed that TCB "presented no evidence that would render a unit of its . . . employees inappropriate" for collective bargaining purposes, rejecting TCB's argument that it had a good faith doubt that the Union still represented its staff's interests. As the ALJ put it, TCB's employees "who had formerly been employed by UNICCO are performing the same work in the same buildings under the same supervision as they had been for" UNICCO. These facts constitute substantial evidence that TCB was a successor who failed to recognize and bargain with the Union. We therefore affirm.

Next, TCB asserts that the Board erred when it found that TCB threatened not to hire individuals because of their union activities and support, in violation of Section 8(a)(1) of the Act. 29 U.S.C. § 158(a)(1). We must only decide whether the record contained substantial evidence sufficient to support the Board's decision. See Gimrock Const., Inc., 247 F.3d at 1311. We conclude that it does.

---

[4] The ALJ described the stipulations as follows:

> The parties stipulated that [TCB], as of March 9, "employed a substantial and representative complement" of unit employees "as a majority" of its workforce that had been "previously employed by UNICCO," did hire a majority of former UNICCO employees, and that "the [. . .] work" formerly performed by UNICCO "has been performed . . . in a substantially similar manner" by the [TCB].

The Board relied primarily on the conversation of supervisor Munoz and employee Correa, in which Munoz said that three individuals were "fired" because of their "strong support for the Union" and Correa "was lucky for being chosen to work" despite his union activity. It explained its basis for relying on Munoz's statements, noting his position and the specific nature of his statements, which included the names of active union members who were not re-hired when TCB succeeded UNICCO. The Board also considered the conversation's context in finding that Munoz's comments to Correa contained a threat not to hire.[5] The Board further found that Munoz's statement represented more than the personal opinion of a low-level supervisor, saying:

> Munoz made the comment to Correa during an official meeting in his office, phrased his message as a definitive statement of fact, and added that the

[5] The Board explained:

> Correa referenced February 2007, when [TCB] succeeded UNICCO and made its hiring decisions. More importantly, Munoz's response left no doubt that he understood that Correa was referring to [TCB's] decision not to hire certain UNICCO employees. He answered that Correa "was lucky for being chosen to work for [the Respondent]" despite his union activity. Further, by specifically mentioning Amparo Correa, Pons, and Lopez, who, in contrast, were not hired by [TCB], Munoz further demonstrated that he understood the inquiry was about [TCB's] decision not to hire certain UNICCO employees.

6

> Respondent knew about Correa's union activity. His comment did not include any suggestion that he was merely offering the opinion of an uninformed supervisor.

From those facts, it drew the inference that Munoz "*did* know why the decisions were made, even if he did not make them."

The Supreme Court has instructed us to heed "the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship." NLRB v. Gissel Packing Co., 395 U.S. 575, 620, 89 S. Ct. 1918, 1943 (1969). Given that instruction, and in light of the evidentiary basis for the Board's inferences and findings, we conclude that it is certainly "possible for a reviewing court to reach the same conclusions" as the Board here. Schering-Plough Corp., 402 F.3d at 1063. Because substantial evidence supports the Board's finding, we affirm.

Finally, TCB argues that the Board erred in finding that the company refused to hire three individuals because of their union involvement, in violation of Sections (8)(a)(3) and (1) of the Act. Courts and the Board use the Wright Line test to determine whether anti-union animus was the motivating factor behind an

7

employer's decision not to hire individuals.[6]  Our review is limited to "determining whether the Board's inference of unlawful motive is supported by substantial evidence—not whether it is possible to draw the opposite inference."  McClain, 138 F.3d at 1424–25.  We conclude that there is substantial evidence for the Board's inference, and affirm.

The Board relied on both direct and indirect evidence to reach its conclusion.  It found "ample evidence" of anti-union animus in supervisor Munoz's statement that TCB didn't hire people because of their "strong support" for the Union.  The Board also identified inconsistent hiring as indirect evidence

---

[6] This Court described the Wright Line test as follows:

> [Wright Line] mandates three phases of proof. First, the [NLRB's] General Counsel must show by a preponderance of the evidence that a protected activity was a motivating factor in the employer's decision to discharge an employee. Such a showing establishes a section 8(a)(3) violation unless the employer can show as an affirmative defense that it would have discharged the employee for a legitimate reason regardless of the protected activity. The General Counsel may then offer evidence that the employer's proffered "legitimate" explanation is pretextual— that the reason either did not exist or was not in fact relied upon—and thereby conclusively restore the inference of unlawful motivation.

McClain, 138 F.3d at 1424 (quotation marks omitted); see NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 114 S. Ct. 2251 (1983) (approving the Wright Line test) overruled on other grounds by, Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 114 S. Ct. 2251 (2005); see also Wright Line, a Div. of Wright Line, Inc., 251 N.L.R.B. 1083 (1980); Planned Bldg. Serv., 347 N.L.R.B. 670, 673–74 (2006) (applying Wright Line to a successor).

of animus, observing that TCB hired "*all* of UNICCO's supervisors, including those responsible for the supposedly dirty work areas," while not hiring all the employees from the same areas.

Additionally, beyond rejecting TCB's affirmative defense under Wright Line prong two, the Board found "further support[]" for its animus finding in the company's failure to substantiate its claim of a lawful rationale for its hiring decisions.[7] From this evidence, the Board inferred that TCB was aware, and acted on its knowledge, of the three individuals' union activities.

Mindful that our role is not "to re-weigh the evidence or make credibility choices," Mead Corp. v. NLRB, 697 F.2d 1013, 1022 (11th Cir. 1983), we conclude that the record as a whole—and in particular the combination of Munoz's statements and reasonable inferences drawn from the circumstantial evidence—contains "substantial evidence" supporting the Board's finding of anti-union animus. We therefore affirm.

### III.

For these reasons, we affirm the Board's findings and grant the Board's

---

[7] To do this, the Board made a credibility determination with respect to Sierra's testimony regarding his hiring decisions. The Board may make such a credibility determination and, unless it is "inherently unreasonable or self-contradictory," we will affirm it. Int'l Bhd. of Boilermakers, et al., 127 F.3d at 1306. The ALJ, in contrast, made no credibility determination because he did not reach this point in the analysis.

petition for enforcement of its order.

**AFFIRMED.**